**UNITED STATES of America,**
**Appellee,**

v.

**Brij MITTAL, M.D., Defendant–**
**Appellant.**

**Docket No. 01–1318.**

United States Court of Appeals,
Second Circuit.

June 10, 2002.

Cheryl J. Sturm, Chadds Ford, PA, for Appellant.

Ping C. Moy, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York; Christine H. Chung, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Present STRAUB and SOTOMAYOR, Circuit Judges, SESSIONS, Judge.*

*SUMMARY ORDER*

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendant-appellant Brij Mittal, M.D., appeals from a judgment of conviction en-

---

* The Honorable William K. Sessions, III, of the United States District Court for the District of Vermont, sitting by designation.

tered in the United States District Court for the Southern District of New York (John G. Koeltl, *Judge* ), following a three-week jury trial.

On November 18, 1998, the Government filed a four-count indictment charging Mittal with one count of participation in a conspiracy in which he allegedly solicited and received illegal kickbacks for Medicare referrals, in violation of 42 U.S.C. §§ 1320a–7b(b)(1) and 1320a–7b(b)(2), and three counts of soliciting and receiving such kickbacks on three specific dates in 1997 and 1998. The evidence at trial showed that Mittal, a medical doctor with offices in Brooklyn, New York, had entered into a referral arrangement with Niranjan Patel, co-owner of Ganesh Surgical Supplies, Inc., a medical equipment supplier in Westchester County, and American Open MRI, a diagnostic laboratory in Queens County. Pursuant to this arrangement, which lasted from about 1990 to 1996, Mittal would refer patients to Patel's companies for Medicare-covered goods and services, and in exchange, Patel would make cash payments to Mittal. Mittal was convicted on all four counts on April 17, 2000. In a judgment filed on June 13, 2001, the District Court sentenced Mittal to, *inter alia,* thirty months' incarceration and three years' supervised release, and this timely appeal ensued.

■ Mittal contends that the District Court erred in refusing to instruct the jury, on each of the four counts, that in order to find him guilty of violating the Medicare anti-kickback statute, 42 U.S.C. § 1320a–7b(b), it had to find that he knew of and intended to violate that specific statute. Instead, the District Court told the jury that the Government was required to prove that Mittal "acted knowingly and willfully," which it defined as follows:

A person acts 'knowingly' if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case. 'Willfully' means to act with knowledge that one's conduct is unlawful and with the intent to do something that the law forbids, that is to say with the bad purpose to disobey or to disregard the law. To find that the defendant acted willfully, you must find that he knew what he was doing was illegal, although he need not have known the specific statute he may have been violating. The defendant's conduct was not willful if it was due to negligence, inadvertence, or mistake.

We have not yet decided whether, in a prosecution for a violation of the Medicare anti-kickback statute, the Government is required to prove that the defendant knew of and intended to violate that specific statute. We recognize the lack of unanimity among the other Circuits that have addressed this particular question. *Compare United States v. Starks,* 157 F.3d 833, 837–39 (11th Cir.1998) (knowledge of statute not required); *United States v. Davis,* 132 F.3d 1092, 1094 (5th Cir.1998) (same); *United States v. Jain,* 93 F.3d 436, 439–41 (8th Cir.1996) (same), *cert. denied,* 520 U.S. 1273, 117 S.Ct. 2452, 138 L.Ed.2d 210 (1997), *with Hanlester Network v. Shalala,* 51 F.3d 1390, 1399–1400 (9th Cir.1995) (knowledge of statute required).

However, we decline to reach the issue, for we find that any error in the District Court's instruction was harmless. The evidence clearly established Mittal's actual knowledge of the Medicare anti-kickback statute. Dr. Pritpal Kang testified that in 1993, he, Mittal, and another colleague sought legal advice from the law firm of Proskauer, Rose, Goetz and Mendelsohn

regarding a diagnostic center that they jointly owned. The three men met with a lawyer at the offices of Proskauer Rose for about two hours, and after the meeting, the lawyer sent a letter to Mittal and his colleagues summarizing the matters discussed at the meeting and his advice on those matters. The letter, eight pages of single-spaced text, identified and discussed in detail the Medicare anti-kickback statute, stating in part:

> The anti-kickback law prohibits any form of "remuneration" "in return for referring an individual to a physician for the furnishing or arranging for the furnishing of any item or service for which payment may be made" by the Medicare or Medicaid programs. Violators are subject to civil and criminal sanctions.

The letter went on to describe various "safe harbors" available under the statute. Dr. Kang testified that the letter accurately reflected what was discussed at the meeting, and that he subsequently spoke with Mittal about the matters covered in the letter. This evidence of Mittal's knowledge of what was unlawful under the anti-kickback statute was not challenged or controverted by the defense. Furthermore, as described above, the District Court instructed the jury that in order to find Mittal guilty, they had to find that he knew that his conduct was unlawful. This instruction ensured that the jury would not convict Mittal for conduct that he considered innocent. We therefore conclude that any deficiency in the District Court's instruction on Mittal's *mens rea* was harmless.

Mittal also challenges the venue of his prosecution, asserting that the allegedly criminal conduct took place at his offices in Brooklyn, which is not within the Southern District of New York. We apply a "substantial contacts" test in determining whether the Government has met its burden of proving that venue is proper, "tak[ing] into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." *United States v. Reed*, 773 F.2d 477, 481 (2d Cir.1985); *see also United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir.2000) (applying *Reed*), *cert. denied sub nom. Rodriguez v. United States*, 532 U.S. 976, 121 S.Ct. 1612, 149 L.Ed.2d 476 (2001). We also recognize that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237.

■ The evidence supports a finding that venue was proper. Under the kickback arrangement described at trial, Mittal would refer patients to Patel and, in return, Patel would send a payment to Mittal. Mittal's referral functioned as the "solicitation" of a particular payment, which was then received by Mittal at his offices. Patel testified that either Mittal or a member of his staff would call Patel's offices in Westchester County—which is part of the Southern District of New York-to refer a patient. Patel then would send the requisite Medicare and/or prescription forms from his office in Westchester to Mittal's office in Brooklyn. Mittal would sign the forms and send them back to Patel's Westchester offices. As to the three undercover payments that were the subject of Counts Two, Three, and Four of the indictment, Patel gave Mittal tally sheets listing the referrals to which the payments corresponded. The referrals underlying each of the three payments were part of the criminal conduct: each was a solicitation of the payment that Pa-

tel eventually made. *See* 42 U.S.C. § 1320a–7b(b)(1) (barring "solicit[ing] or receiv[ing] any remuneration" in return for Medicare referrals). Because those solicitations "reached into" the Southern District of New York by telephone and mail, venue was proper. *Cf. United States v. Stephenson*, 895 F.2d 867, 874–75 (2d Cir. 1990) (in bribery case, venue was proper in the Southern District of New York where defendant, while in Washington, D.C., called individuals in New York seeking bribes).

Lastly, Mittal claims that he received ineffective assistance of counsel at trial. This argument was rejected by the District Court in its ruling on Mittal's motion for a new trial pursuant to Rule 33 of the Federal Rules of Civil Procedure, and we affirm substantially for the reasons stated in the District Court's thorough and well-reasoned opinion. *See United States v. Mittal*, 98 Cr. 1302, 2000 WL 1610799 (S.D.N.Y. Oct.27, 2000).

For the reasons stated, we AFFIRM the judgment of the District Court.