# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3817

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Christopher Wayne Lamoreaux, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 20, 2005
Filed: September 7, 2005

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Christopher Wayne Lamoreaux appeals his mail fraud conviction under 18 U.S.C. § 1341, arguing the evidence was insufficient, rebuttal evidence was improperly admitted, and an instruction issue. He also appeals the 21-month prison sentence imposed by the district court.[1] We affirm.

_____

[1]The HONORABLE HOWARD F. SACHS, United States District Judge for the Western District of Missouri.

## I. Sufficiency of the Evidence.

We briefly summarize the facts in the light most favorable to the jury verdict. In late 2002, Lamoreaux was president of a closely held corporation, NuCare Pharmaceuticals, that repackaged bulk drug shipments for wholesale distribution. Acting on behalf of NuCare, Lamoreaux negotiated an agreement with Albers Medical, Inc., a Kansas City pharmaceuticals distributor, under which NuCare repackaged bulk shipments for Albers Medical customers. In early 2003, NuCare invoiced Albers Medical for four profitable repackaging transactions, one involving the drug Bextra and three involving the drug Lipitor.

On February 7, 2003, Albers Medical mailed a check for $6,815.22 payable to Consulting Ventures, Inc., a corporation recently formed by Lamoreaux and his wife. The check contained the notation "Commissions-bextra 0103." Bextra 0103 was the number of a $349,358 invoice from NuCare to Albers Medical for repackaging Bextra tablets. On March 26, 2003, Albers Medical mailed a check for $108,463.32 to Consulting Ventures. This check contained the notation "NUCARE INV. 133242, 12873, 12622," numbers corresponding to three NuCare invoices to Albers Medical totaling $5,473,411 for repackaging Lipitor tablets. Albers Medical Office Manager Shari Webb testified that she prepared and mailed the checks at the direction of Paul Kriger, the Albers Medical agent with whom Lamoreaux negotiated the Bextra and Lipitor transactions. Webb's contemporaneous notes contained the notation "28694 ⇨ $3.78 $108,463.32 Consulting Ventures LLC Com. Chris." She testified that "Chris" referred to Lamoreaux and "Com." meant commission. Lamoreaux admitted that he directed that the checks be made payable to Consulting Ventures.

On March 11, 2003, Lamoreaux abruptly resigned from NuCare. Two NuCare principals testified that Lamoreaux did not disclose the payments he received from Albers Medical, that they did not learn of the payments until some months later, and that the fact of the secret payments was material to NuCare. Lamoreaux testified that

the two payments were not commissions on the Albers Medical purchases from NuCare. Rather, they were advances paid by Kriger and the owner of Albers Medical to help Lamoreaux and his wife start a rival drug repackaging company. Kriger and the owner of Albers Medical did not testify. The jury found Lamoreaux guilty of two counts of mail fraud, one for each Albers Medical check.

On appeal, Lamoreaux does not challenge the jury's rejection of his defense that the payments were advances unrelated to NuCare's sales to Albers Medical. Rather, he argues that the evidence was insufficient because the government failed to prove that he intended to harm NuCare, or that his scheme actually harmed NuCare. "We will overturn a jury verdict only if no reasonable jury could have found the offense elements proved beyond a reasonable doubt." United States v. Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999).

Mail fraud is use of the mails to execute a "scheme or artifice to defraud." 18 U.S.C. § 1341. Congress amended the mail fraud statutes in 1988 to provide that the term scheme or artifice to defraud "includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. This statute applies "to schemes to violate a private sector fiduciary's duty to provide honest services to his clients." Pennington, 168 F.3d at 1064. It is well-settled in this circuit that, to prove a scheme to defraud, the government need not prove actual harm. "The essence of a scheme to defraud is an intent to harm the victim." United States v. Jain, 93 F.3d 436, 442 (8th Cir. 1996), cert. denied, 520 U.S. 1273 (1997).

In this case, the government's theory was that Lamoreaux received secret kickbacks from Albers Medical that deprived NuCare of its intangible right to his honest services as a corporate officer in negotiating the most favorable possible repackaging transactions. Consistent with our decision in Pennington, 168 F.3d at 1065, the district court's Instruction H explained to the jury:

H.  A defendant's intent or knowledge may be proved like anything else. . . . You may infer that a person intends harm when there is a willful nondisclosure by a fiduciary, such as a corporate officer, of material information he has a duty to disclose.

You are instructed that, by reason of his position with NuCare, defendant had a duty to disclose all material facts relating to that company's business transactions, and otherwise act in its best interests.[2]

Lamoreaux argues that the government failed to prove intent to defraud because there was no proof NuCare could have negotiated a better contract with Albers Medical absent the secret kickbacks.  That lack of proof, he contends, distinguishes this case from Pennington, where the government proved that at least one supplier raised its prices to cover the cost of the kickbacks.  But this argument simply restates the proposition, squarely rejected in both Jain and Pennington, that proof of intent to harm the victim requires proof of actual harm.  To be sure, in a business context, proof of actual financial harm to the victim is highly relevant in distinguishing criminal fraud from a mere breach of fiduciary duty.  See Pennington, 168 F.3d at 1065.  Absent proof of actual harm, "the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent."  Jain, 93 F.3d at 442 (quotation omitted).[3]  But in a case like this, proof that

_____

[2]Lamoreaux argues that the district court erred in giving Instruction H because the second paragraph did not correctly state the law regarding intent to defraud and "essentially nullified" the first paragraph by "directing the jury [to] find that defendant had an intent to defraud NuCare."  We disagree.  The instruction correctly stated the law regarding intent to defraud in an "honest services" mail fraud prosecution.  See Pennington, 168 F.3d at 1065.  Therefore, it was well within the district court's substantial discretion in formulating jury instructions.

[3]Indeed, some have argued that disagreement among the circuits over critical issues such as whether actual harm must be proved demonstrates that 18 U.S.C. § 1346 is so vague as to be facially unconstitutional.  See United States v. Rybicki, 354 F.3d 124, 162-63 (2nd Cir. 2003) (en banc) (Jacobs, J., dissenting).

a customer made substantial and secret kickbacks to a corporate fiduciary is sufficient to support a finding of intent to harm because actual harm may reasonably be inferred from the fact that the customer paid the fiduciary amounts to which the corporation was entitled. See United States v. George, 477 F.2d 508, 513-14 (7th Cir.), cert. denied, 414 U.S. 827 (1973). "When the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." United States v. D'Amato, 39 F.3d 1249, 1257 (2nd Cir. 1994) (quotation omitted).

## II. The Government's Rebuttal Evidence.

After Lamoreaux testified that the Albers Medical payments were unrelated to its purchases from NuCare, despite notations on the checks to the contrary, the government in rebuttal presented testimony by Diana Coelyn, an employee of another drug repackaging company, that she too had received secret payments from Albers Medical. Coelyn and Shari Webb identified a series of Albers Medical checks containing notations similar to those on Lamoreaux's checks, which Coelyn testified were commission payments to her. In response to Lamoreaux's objection, the district court barred the government from eliciting the fact that Coelyn pleaded guilty to violating 18 U.S.C. § 1341 for receiving these kickbacks, unless Lamoreaux raised that issue in cross examination. Lamoreaux then declined to cross examine Coelyn. At the conclusion of her testimony, the district court instructed the jury not to speculate as to whether anyone might have been prosecuted for her activities.

On appeal, Lamoreaux argues, without citation to authority, that it was "completely improper" to allow testimony "related to conduct of others not charged in the instant offense to establish a pattern and practice" of how people did business with Albers Medical. Like the district court, we disagree. Lamoreaux's defense was that Albers Medical inaccurately recorded the two checks as "commissions." Coelyn's testimony tended to refute this defense. "The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party," and the decision

to admit rebuttal testimony "is entrusted to the sound discretion of the district court." United States v. Luschen, 614 F.2d 1164, 1170 (8th Cir.), cert. denied, 446 U.S. 939 (1980). We see no abuse of discretion in permitting the government to offer Coelyn's relevant testimony, carefully circumscribed to ensure that its relevance was not outweighed by the danger of *unfair* prejudice. See Fed. R. Ev. 403.

Lamoreaux further argues, again without citation to authority, that the district court erred in ruling that the government could introduce Coelyn's guilty plea if Lamoreaux cross-examined her about her agreement with the government to testify, because that ruling required him "to forego any meaningful exercise of his Sixth Amendment right to confrontation." This argument is without merit. Lamoreaux's decision not to cross-examine Coelyn was plainly a matter of trial strategy.

### III. Sentencing Issues.

Responding to potential Sixth Amendment issues in the wake of United States v. Blakely, 542 U.S. 296 (2004), the district court submitted two special verdict forms, asking the jury to find, in the event it reached a guilty verdict, (1) whether Lamoreaux abused a position of trust at NuCare "in order to facilitate the commission and concealment of mail fraud," and (2) the amount of Lamoreaux's "monetary gain . . . as a result of the crimes of mail fraud." The jury found that Lamoreaux abused a position of trust and gained $115,278.54 from the fraud, the amount of the two kickbacks. At sentencing, the district court independently found an abuse of trust for purposes of U.S.S.G. § 3B1.3, and a "loss measured by a gain to the defendant" of $115,278.54 for purposes of U.S.S.G. § 2B1.1(b)(1)(E).

On appeal, Lamoreaux first argues that the district court erred in submitting the special verdicts to the jury without defining the term "abuse of trust" and explaining when monetary gain is an appropriate measure of loss. In general, the district court's use of special verdicts in a criminal case is reviewed for abuse of discretion. See

United States v. Reed, 147 F.3d 1178, 1180-81 (9th Cir. 1998). In this case, however, given the district court's independent findings at sentencing, any error in submitting special verdict forms concerning the two sentencing issues was clearly harmless.

Lamoreaux next argues that the district court erred in measuring loss for guidelines sentencing purposes by Lamoreaux's gain from the kickback payments because "[g]ain may not serve as a proxy for loss where there has been no demonstrable actual or intended loss." We disagree. For sentencing purposes, mail fraud loss is the greater of the loss the defendant intended to inflict and the actual loss inflicted. See U.S.S.G. § 2B1.1, comment. (n.2(A)) (2002). "The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." Id. at comment. (n.2(B)). Here, the district court found, as a matter of "basic economics," that the loss could be estimated by Lamoreaux's gain because the money he received from Albers Medical should have gone to NuCare. This finding is consistent with other kickback cases such as United States v. O'Malley, 364 F.3d 974, 979-80 (8th Cir. 2004). The district court's calculation of loss was not clearly erroneous. See United States v. Shevi, 345 F.3d 675, 678 (8th Cir. 2003) (standard of review), cert. denied, 540 U.S. 1166 (2004).

Finally, conceding that the district court correctly anticipated United States v. Booker, 125 S. Ct. 738 (2005), by treating the Guidelines as unconstitutional and therefore advisory, Lamoreaux argues that the court erred by failing to explicitly consider the other sentencing factors set forth in 18 U.S.C. § 3553(a), as Booker requires. Again, we disagree. Nothing in § 3553(a) or in the Booker remedy opinion requires "robotic incantations" that each statutory factor has been considered. United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005); accord United States v. George, 403 F.3d 470, 472-73 (7th Cir. 2005). Here, the sentencing record demonstrates that the district court applied the Guidelines in an appropriately advisory fashion and considered Lamoreaux's plea for leniency based on non-Guidelines factors such as his prior military service, his wife's pregnancy, his need to take care of his other

children, and his entrepreneurial spirit.  There was no <u>Booker</u> error.  Alternatively, if it was error not to explicitly discuss each § 3553(a) factor, the error was harmless.

The judgment of the district court is affirmed.

_____