# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2729

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Little

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: March 13, 2020
Filed: June 9, 2020
[Published]

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

PER CURIAM.

A jury convicted inmate Robert Little of escaping from custody, see 18 U.S.C. §§ 751(a) & 4082, after he arrived two days late at a halfway house following a blizzard. The district court sentenced him to five months imprisonment to run consecutively with his prior sentence. Little appeals, claiming that the evidence was

insufficient to show he willfully left the "extended limits of confinement." We agree and reverse.

## I.

Little was serving a felony sentence at FCI Oxford in Wisconsin when the Bureau of Prisons approved a furlough application for him to serve out the remainder of his sentence at Community Alternatives of the Black Hills (CABH), a halfway house in Rapid City, South Dakota. On January 24, 2019, Little met with an assistant case manager to discuss and review the furlough application that set his travel schedule and restrictions that he had to follow. Little was scheduled to depart FCI Oxford on February 5 at 7:50 p.m. and report to CABH in Rapid City by February 6 at 5:50 p.m. The travel schedule instructed Little to ride the bus from Wisconsin Dells, Wisconsin to Rapid City, and then take a taxi to CABH. Little mentioned "something about" his wife picking him up but was told to follow the travel schedule. Gov't Br. 5. The assistant case manager reiterated the furlough application's command that "[i]f anything went wrong, [Little] was supposed to call the halfway house and the FCI Oxford facility." 4/16/19 Hr'g Tr. 182:4–5.

During that meeting, Little read and signed an "Understanding" paragraph explaining that he was still in custody and "authorized to be only in the area of the destination shown on the furlough application and at ordinary stopovers or points on a direct route to or from that destination." Add. 8. It also stated that if he failed to remain within the extended limits of confinement he could be charged with escape. The furlough application explained that Little was subject to "disciplinary action, arrest, and criminal prosecution for violating any condition(s) of furlough," and that he should contact the facility in the event of arrest or "any other serious difficulty or illness." Add. 4.

Little left on a prison transport as scheduled, but he did not arrive at CABH until 7:39 p.m. on February 8—two days late. At trial, the Government showed that

Little had to take three different buses: (1) Wisconsin Dells to Minneapolis, (2) Minneapolis to Sioux Falls, and (3) Sioux Falls to Rapid City. The Rapid City bus manager testified that the first bus arrived in Minneapolis half an hour late and that it was impossible for Little to transfer to the Sioux Falls bus on February 6. A winter storm cancelled bus service from Minneapolis to Sioux Falls on February 7 and from Sioux Falls to Rapid City on February 6 and 7. As a result, the earliest Little could have arrived by bus in Rapid City was 6:45 p.m. on February 8.

The record is silent on how Little actually traveled to CABH, including who, if anyone, dropped him off there. Other than a copy of the furlough application (with his travel schedule and the phone number to CABH), it is unknown what Little had with him when he left FCI Oxford or what he had when he arrived at CABH. The assistant case manager testified that it would be unusual for Little to have a phone when he left FCI Oxford and agreed that Little would have had to borrow or buy a phone to make a call. The Rapid City bus manager had a phone that she let inmates use, but the Government presented no evidence that she was on duty when Little would have arrived or that Little could access a phone at any other time.

Little moved for a judgment of acquittal, and the district court denied the motion. The court sentenced him to five months' imprisonment, and Little timely appealed.

## II.

"We review the denial of a motion for a judgment of acquittal based on the sufficiency of the evidence *de novo*." United States v. Chatmon, 742 F.3d 350, 352 (8th Cir. 2014). "We will affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have found the defendant guilty." Id. (citation omitted). We apply this standard strictly, and "we will not

lightly overturn the jury's verdict." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) (citation omitted).

To convict under § 751, the Government must "prove (1) that [the Defendant] had been in the custody of the Attorney General, (2) as the result of a conviction, and (3) that [he] had escaped from that custody."[1] United States v. Bailey, 444 U.S. 394, 407 (1980). Generally, the Government need only show that "an escapee knew his actions would result in his leaving physical confinement without permission." Id. at 408. For an inmate on furlough, however, escape is "[t]he willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General." 18 U.S.C. § 4082(a).

The parties vigorously dispute what "extended limits of confinement" means. Little claims that this term only "relat[es] to physical boundaries or location." Little Br. 20. The Government asserts that "'limits' can refer to physical, geographic, associational, temporal, and any other restraints on an inmate's freedom," Gov't Br. 12, essentially, that violating any condition in the furlough application is a felony escape under §§ 751 and 4082. But we need not define the outer contours of the offense in this factually unusual case. Even assuming that Little violated the extended limits of his confinement by not calling authorities when he was going to be late, the only furlough violation the Government proved, there is no evidence that failure was willful.

Although the Government introduced evidence that Little did not arrive on time and that he did not call authorities about his travel, the question is whether Little's conduct was willful. See United States v. Bruguier, 735 F.3d 754, 762 (8th Cir. 2013) (en banc) ("[T]he mens rea that introduces the elements of the crime applies to each element."). "The word 'willful' has many meanings and must be construed in

---

[1]Little stipulated to the first two elements and does not challenge those here.

light of its statutory context." <u>United States v. Jain</u>, 93 F.3d 436, 440 (8th Cir. 1996). In a criminal statute, willfulness requires a defendant to have acted with knowledge that his conduct was unlawful. <u>Dixon v. United States</u>, 548 U.S. 1, 5 (2006). In this context, "willfulness is proved by evidence that a defendant acted voluntarily and with knowledge that his conduct was unlawful, even if he did not know the specific statute violated." <u>United States v. Kelly</u>, 368 F. App'x 194, 198 (2d Cir. 2010).

Keeping in mind the high level of deference the jury verdict deserves, the Government did not meet its burden.[2] As to his late arrival, there is no evidence as to what Little did from the time he was dropped off at the bus station until the time he arrived at CABH. There is no proof that he failed to travel by bus as the furlough application required.[3] Instead, the Government proved that it was impossible to arrive on time by bus and that he was at CABH less than an hour after the first available bus finally arrived in Rapid City. Little cannot willfully fail to appear if the evidence only showed that the approved transportation did not operate on time.

The case then turns on whether the Government presented sufficient evidence that Little willfully failed to call authorities as the furlough application required. There is no evidence that Little had access to a phone at any of his stopover points in

---

[2]The Government points out that by reaching the verdict the jury rejected Little's necessity defense. But a defendant's failure to prove an affirmative defense does not relieve the Government of its burden to present evidence for each element of the crime to support the verdict.

[3]In opening arguments, both the Government and Little told the jury that the evidence would show that Little called his wife, who picked him up and drove him to CABH. At best, Little's comment about his wife at the January 24 meeting shows an intent to ride with her. The Government produced no evidence that gives rise to an inference that it actually happened. Argument is not evidence. <u>See</u> <u>United States v. Barrera</u>, 628 F.3d 1004, 1010 (8th Cir. 2011).

Minneapolis, Sioux Falls, or Rapid City. Although the Rapid City bus manager explained that she helped inmates before she left for the night, she did not testify that the manager on duty did the same or that she worked when Little would have arrived. Because the testimony showed that Little would have to borrow a phone to make a call, a jury cannot reasonably infer that failing to call was Little's choice.

This is not an ordinary escape case where willfulness can be inferred from the defendant's knowledge it was unlawful to arrive late and the absence of a good reason for doing so. In such a case, the failure to call might support an inference that the inmate willfully failed to arrive on time. By contrast, the Government's case-in-chief proved that it was impossible for Little to arrive on time by bus. The Government also did not show he had access to a phone, nor did it produce evidence of a payphone at any of the bus stops, how Little got from Wisconsin Dells to Rapid City, phone records showing calls to his wife from that time period, or any statements Little may have made about his trip. Under these unusual circumstances, and given the Government's failure to produce *any* supporting evidence, there is no reasonable inference that Little acted willfully.

Because the record contains no evidence that Little willfully failed to call or arrive at the halfway house on time, we reverse the judgment of conviction and remand to the district court for further proceedings consistent with this opinion.

_____