# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2778

_____

United States of America

*Plaintiff - Appellee*

v.

Reuben F. Goodwin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 16, 2020
Filed: September 8, 2020

_____

Before LOKEN, ARNOLD, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury convicted Reuben Goodwin of conspiracy to violate federal health care laws, as well as eleven substantive counts of health care fraud. Goodwin appeals, arguing the evidence was insufficient to support the verdict. We affirm the judgment of the district court.[1]

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

# I. Background

In July 2017, a grand jury returned an indictment charging multiple people, including Goodwin, with crimes related to health care fraud involving AMS Medical Laboratory, Inc. ("AMS"), an entity that provided medical testing of blood, urine, and other specimens.

The indictment charged, in part, that in violation of federal anti-kickback legislation, 42 U.S.C. § 1320a-7b(b), AMS entered into contracts with other individuals and companies under which AMS would pay a percentage of the money received from federal reimbursement programs (such as Medicare) to those individuals and companies for referrals of specimens for testing. One such contract was with Southwest Disability Services ("SWDS"), a non-profit agency that provided services to adults with developmental disabilities or alcohol abuse problems. Goodwin was the executive director of SWDS. The government alleged SWDS often referred specimens it collected at churches and public fairs. The government further alleged SWDS collected and referred the specimens to AMS without a doctor or other qualified professional ordering the test, as required for payment by insurers. According to the government, SWDS solicited and used doctors who would attach their names to the tests without examining or having information about the patients. AMS paid SWDS over $100,000 in exchange for referred specimens.

The government charged Goodwin with one count of conspiring to defraud the United States in violation of 18 U.S.C. §§ 371 and 2, by accepting illegal kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1), defrauding a health care benefit program in violation of 18 U.S.C. § 1347(a), and making fraudulent statements in violation of 18 U.S.C. § 1035. The government also charged Goodwin with eleven substantive counts of health care fraud in violation of 18 U.S.C. §§ 1347(a)(2) and 2, related to specific transactions involving illegal kickbacks.

A jury trial was held on the charges against Goodwin and two other individuals. The jury convicted Goodwin on all counts. Goodwin appealed, challenging the sufficiency of the evidence supporting the jury's verdict.

## II. Discussion

When a jury verdict is challenged on this basis, "[w]e review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor and accepting all reasonable inferences that support the verdict." *United States v. Grimes*, 825 F.3d 899, 902 (8th Cir. 2016) (quoting *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003)). "[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *Id.* (quoting *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003)).

We begin by considering Goodwin's challenge to the sufficiency of evidence supporting his conviction for conspiracy in violation of 18 U.S.C. § 371. To convict Goodwin for conspiracy, the jury needed to find beyond a reasonable doubt that there was a conspiracy with an illegal purpose, Goodwin was aware of the conspiracy, and he knowingly became part of the conspiracy. *United States v. Dupont*, 672 F.3d 580, 583 (8th Cir. 2012).

Goodwin argues that because the conspiracy charge's criminal objectives all require a heightened mens rea,[2] the government needed to establish he knew his

---

[2]*See* 42 U.S.C. § 1320a-7b(b)(1)(A) (requiring the government establish that the defendant "*knowingly and willfully* solicit[ed] or receive[d] any remuneration (including any kickback, bribe, or rebate) . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or part under a Federal health care program")

conduct was wrongful and he intended to further the criminal objectives. *See United States v. Jain*, 93 F.3d 436, 440 (8th Cir. 1996) (affirming the district court's use of a jury instruction for a charged violation of 42 U.S.C. § 1320a-7b, which defined the word "willfully" as meaning "unjustifiably and wrongfully, known to be such by the defendant . . ."); *see also United States v. Calhoun*, 721 F.3d 596, 601 (8th Cir. 2013) ("Conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959))).

Goodwin maintains the government did not meet its burden because the evidence did not establish that he knew his conduct was wrongful or that he intentionally participated in the plan with the intent to further any of its criminal objectives. He points to AMS agent Anthony Camillo and, to a lesser extent, SWDS employee Phillip Jones as the primary bad actors. According to Goodwin, he was duped into joining a conspiracy he did not know was illegal. Thus, Goodwin contends his conspiracy conviction must be reversed. And if the conspiracy conviction is vacated, the convictions for individual instances of health care fraud — which were based in part on acts by co-conspirators[3] — must be reversed as well,

_____

(emphasis added); 18 U.S.C. § 1347(a) (making it illegal to "*knowingly and willfully*" execute or attempt to execute a scheme to defraud a health care benefit program) (emphasis added); 18 U.S.C. § 1035(a) (making it illegal to "*knowingly and willfully*" engage in certain designated deceptive activities in connection with the payment for health care benefits) (emphasis added). The parties have not briefed, and we have no reason to decide, whether the use of "knowingly and willfully" has the same meaning within each of the aforementioned statutes. *See United States v. Jain*, 93 F.3d 436, 440 (8th Cir. 1996) (explaining "[t]he word 'willful' has many meanings and must be construed in light of its statutory context").

[3]*See Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) (holding that an overt act in furtherance of the conspiracy by one member of a conspiracy is attributable to all other members of the conspiracy).

either because Goodwin lacked the requisite intent to commit the fraud or because he could no longer be held responsible for the acts of his purported co-conspirators.

We reject Goodwin's characterization of the evidence. Viewing the evidence in a light most favorable to the government, Goodwin voluntarily and intentionally participated in the conspiracy with knowledge that it was unjustifiable and wrongful to receive kickbacks and defraud Medicare.

The federal anti-kickback statute prohibits "knowingly and willfully . . . receiv[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in case or in kind . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ." 42 U.S.C. § 1320a-7b(b)(1)(A). AMS entered into an arrangement with Jones and Goodwin that directly violated this ban in that AMS would provide half the profits collected from Medicare on each specimen referred to it by Goodwin and Jones. While SWDS employee Jones and AMS representative Camillo had the initial conversations about the arrangement, the evidence and testimony presented to the jury showed Goodwin was aware of, and actively participated in, the negotiation of the terms of the agreement. In fact, Camillo testified it was Goodwin who brought up the idea of going to health fairs at local churches to collect specimens from people for testing which would be paid for by government insurance. Also, on multiple occasions, Goodwin followed up with Camillo to make sure Goodwin and Jones received payment for the specimens they referred.

Moreover, the jury heard evidence from which it could reasonably conclude Goodwin knew federal law prohibited the arrangement. First, the government presented evidence that, in the midst of the conspiracy, Goodwin certified that SWDS would abide by the federal anti-kickback law when he signed a Medicare application

form. Arguably, this put Goodwin on notice that his arrangement with AMS was unlawful.

The jury also heard evidence about Goodwin's significant experience working with federal health care programs, which made it more likely he knew of the kickback prohibition. Indeed, for multiple years, Goodwin served as the executive director of SWDS, a Medicare-enrolled service provider. SWDS worked extensively with federal health care programs under Goodwin's direction, receiving well over $11 million in government reimbursements between 2010 and 2016. Someone like Goodwin, who had extensive experience working with federal health care reimbursements and who certified he would comply with the prohibition against kickbacks, is more likely than the average person to know that the payments for referrals violated federal law.

Likewise, a jury could reasonably conclude Goodwin knew of the wrongful nature of his receipt of the kickbacks based on another aspect of the arrangement that violated Medicare law. The government presented evidence that Diane Emnett, a billing specialist hired by AMS, met with Goodwin and Jones and advised them they needed to provide the ordering physician's name on each specimen provided in order to comply with Medicare's requirements. Emnett testified this was needed to substantiate the medical necessity of the test. Despite this advice, Goodwin and Jones collected and referred the specimens to AMS without a doctor or other qualified professional ordering the specimens, as required for payment by insurers. Instead, they used doctors who would attach their names to the tests without examining or having information about the patients. A government agent who reviewed the records testified she observed a pattern where SWDS's vulnerable patients were being billed multiple times for very expensive tests without doctors determining such tests were necessary. Considering Emnett's testimony, a reasonable juror could conclude Goodwin knew his practice of listing doctors who did not actually request the tests was wrongful.

Viewed in the light most favorable to the government, the evidence of Goodwin's significant experience with federal health care program reimbursements, his attestation that he would comply with federal anti-kickback laws, and his collection of specimens without a doctor's orders, is collectively enough evidence to support a conclusion that Goodwin knew the arrangement with AMS was unjustifiable and wrongful when he voluntarily joined the conspiracy. We will not disturb the jury's decision to convict Goodwin.

### III. Conclusion

We affirm the judgment of the district court.

_____