In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 02-3945 & 02-3946

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES J. HAUSMANN and
SCOTT P. RISE,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 02 CR 10—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED APRIL 17, 2003—SEPTEMBER 22, 2003

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Charles P. Hausmann pleaded guilty to a charge of conspiracy to commit mail and wire fraud. A jury convicted Scott J. Rise of the same offense. Each defendant appeals from the district court's denial of his pretrial motion for dismissal of the indictment. Rise also challenges the district court's jury instructions and Hausmann appeals from his sentence based on his challenge to the district court's calculation of the loss amount attributable to the fraud. For the reasons set forth herein, we affirm the decisions of the district court and, consequently, Hausmann's sentence and Rise's conviction.

**BACKGROUND**

Hausmann, a Milwaukee, Wisconsin, personal injury lawyer, referred certain of his clients to Rise, a chiropractor, for chiropractic services paid from insurance settlement proceeds, in return for which Rise made corresponding payments, equal to twenty percent of the fees he collected for those services, to third-party recipients at Hausmann's direction. Recipients included (i) individuals who had provided miscellaneous personal services to Hausmann or his relatives, (ii) a marketing firm providing services at Hausmann's direction, (iii) business entities (or their agents) in which Hausmann held some interest, and (iv) charities that Hausmann supported.[1] Between October 1999 and June 2001, these payments totaled $77,062.87. Hausmann did not disclose this kickback arrangement to his clients, ordinarily victims of automobile accidents. The typical client signed a retainer agreement providing that, in exchange for the services of Hausmann's law firm, Hausmann-McNally, S.C., he or she would pay the firm one third of "whatever total sum is collected." The standard agreement also provided as follows:

> The client further authorizes his attorney to pay medical and other bills incurred as a result of this

---

[1]  For example, Rise paid (i) a total of $31,692.00 to a marketing firm with whom Hausmann, but not Rise, contracted to market the services of lawyers and chiropractors as part of a planned "Accident Care Network"; (ii) at least $2000, nominally to a charity, but effectively as consideration for landscaping work performed at Hausmann's residence; (iii) a total of $14,900 to a full-time handyman who provided services at Hausmann's direction to Hausmann's firm, Rise's practice, Hausmann personally, a business jointly owned by Hausmann and his law partner in their individual capacities, and Hausmann's sister; and (iv) $850 to a company that refinished the wood floors of a contract employee involved in Hausmann's marketing project.

accident directly to the doctors and hospitals. *It is further understood and agreed that said money to pay these bills shall come from the client's portion of the settlement.*

(Emphasis in original).

In January 2002, Hausmann and Rise were indicted on charges of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §371.[2] Both defendants moved for pretrial dismissal of the indictment, which they argued failed to allege a criminal offense or the essential elements thereof. The motions were heard by a magistrate judge, upon whose recommendation the district court denied them. Hausmann then entered a conditional plea of guilty on the conspiracy charge, preserving his right to appeal the denial of his motion to dismiss.

A jury convicted Rise of the conspiracy charge. At Rise's trial, his former employee testified that Rise used the term "kickback" to describe the payments. Rise filed unavailing motions for a judgment of acquittal and for arrest of judgment. The district court sentenced Hausmann and Rise each to sixty-day terms of imprisonment (stayed pending the disposition of this appeal) and twelve-month terms of supervised release, and ordered them to pay restitution in the joint and several amount of $77,062.87.

This appeal ensued.

---

[2] Hausmann was additionally charged with causing securities (kickback payment checks written by Rise) to be transferred in interstate commerce in connection with the fraud, in violation of 18 U.S.C. §§ 2314 & 2, but this count was dismissed pursuant to a plea agreement.

## ANALYSIS

### I.  Sufficiency of the Indictment and Evidence of Rise's Guilt

Appellants challenge the sufficiency of the indictment, asserting that it fails adequately to allege the elements of the underlying mail and wire fraud offense. Rise further argues that the government failed to prove the aforementioned elements and that, consequently, the district court improperly denied his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

We review de novo both the sufficiency of a criminal indictment, *see, e.g.*, *United States v. Irorere*, 228 F.3d 814, 830 (7th Cir. 2000), and the denial of a motion for judgment of acquittal, *see, e.g.*, *United States v. Jones*, 222 F.3d 349, 351 (7th Cir. 2000). A valid indictment must (i) state each element of the alleged offense, (ii) provide the defendant with information adequate for the preparation of his defense, and (iii) provide sufficient basis for a judgment that would bar any subsequent prosecution for the same offense. *See* FED. R. CRIM. P. 7(c); *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Allender*, 62 F.3d at 914. Denial of a motion for judgment of acquittal is appropriate unless "the evidence is insufficient to sustain a conviction," FED. R. CRIM. P. 29(a). "In considering the sufficiency of the evidence, we review it in the light most favorable to the prosecution, and as long as any rational jury could have returned a guilty verdict, the verdict must stand." *Jones*, 222 F.3d at 352 (internal citations omitted).

Rise's appeal from the denial of his motion for judgment of acquittal is duplicative of Appellants' challenge to the

sufficiency of the indictment. Both theories allege that the government failed to allege or prove, respectively, the following purported elements of the mail and wire fraud offenses underlying the conspiracy charge: (i) actual or foreseeable harm to Hausmann's clients; (ii) Hausmann's fiduciary duty in excess of that memorialized in the retainer agreements; (iii) that Hausmann's conflict of interest adversely affected his clients; (iv) intent to defraud; (v) the materiality of the nondisclosure to clients of the scheme; and (vi) the scheme's interstate jurisdictional nexus.

Where "two or more persons conspire . . . to commit any offense" under Title XVIII of the United States Code "one or more of such persons [who commit] any act to effect the object of the conspiracy" may be held criminally liable therefor under 18 U.S.C. § 371. It is a violation of 18 U.S.C. §§ 1341, 1543, and 1346 to use the United States Postal Service, a private interstate courier, or an interstate wire communications service in order to implement a "scheme or artifice to defraud [by depriving] another of the intangible right of honest services." 18 U.S.C. § 1346. Despite our doubts as to the applicability of these "intangible-rights theory" provisions of the mail and wire fraud statutes to cases of breach of fiduciary duty with nothing more, this Court has suggested that liability under this theory may nonetheless result where a defendant misuses his fiduciary relationship (or information acquired therefrom) for personal gain. *See United States v. Bloom*, 149 F.3d 649, 655-56 (7th Cir. 1999). We have held, moreover, that an employee's undisclosed derivation of profits from business he transacted on his employer's behalf amounted to a deprivation of the employer's intangible right to honest services in violation of 18 U.S.C. §§ 1341 and 1346. *United States v. Montani*, 204 F.3d 761, 768-69 (7th Cir. 2000). Accordingly, under the intangible-rights theory of federal mail or wire fraud liability, a valid indict-

ment need only allege, and a finder of fact need only believe, that a defendant used the interstate mails or wire communications system in furtherance of a scheme to misuse his fiduciary relationship for gain at the expense of the party to whom the fiduciary duty was owed.

Here, the indictment clearly and correctly stated the fiduciary relationship between Hausmann and his clients:

> During the time period of the scheme, Hausmann-McNally, S.C., including defendant Hausmann and other agents and employees under his direction, owed a fiduciary duty to the clients of the law firm, . . . [including] the obligation of Haussman-McNally to disclose to the client any financial interest that the law firm may have involving the representation; to advise the client in a conflict-free manner; . . . to negotiate in the best interest of the client[; and] *to provide accurate and complete information to the clients regarding the financial terms of personal injury case settlements, as well as the amount of compensation taken by the lawyers involved in the case.*

(Emphasis added). Furthermore, at Rise's trial, the government presented the testimony of Hausmann's law partner, John McNally, describing the clients' dependence upon legal representation by the firm in order to settle their claims, as well as testimony from several clients describing Hausmann's written representations regarding their settlements and the firm's compensation and the reliance they placed thereupon.

The Wisconsin Supreme Court Rules of Professional Conduct for Attorneys provide that "[a] lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest." Comment to WIS. SUP. CT. R. 20:1.7(b). Thus, the indictment's statement that "[t]he kickback arrangement was concealed from the clients

of Hausmann-McNally in violation of the fiduciary duty described above" clearly alleges Hausmann's misuse of the fiduciary relationship. Testimony of clients that were unaware of the kickback scheme served as evidence at Rise's trial of the misuse of the fiduciary relationship.

The indictment also clearly alleged, and the government demonstrated at Rise's trial, that Hausmann gained over $70,000 in kickback payments made to third parties for his personal benefit or entities in which he had some interest, including, for example, "at least $2000 in landscaping improvements performed at Hausmann's personal residence," and that such concealed payments deprived clients of the intangible right of honest services. At trial, for example, the government produced evidence that Rise signed a check in the amount of $1000 as a direct payment for such landscaping work.

Appellants contend that Rise's third-party payments were not kickbacks, but rather constituted the legitimate spending of income derived from use of fees to which Rise was legally entitled. They maintain that Hausmann's clients had no right to the settlement funds paid to Rise nor, consequently, to the allocation of twenty percent of those funds to expenditures designated by Hausmann. In this sense, reason Appellants, no harm resulted to Hausmann's clients, who were deprived of nothing to which they were entitled. This reasoning ignores the reality that Hausmann deprived his clients of their right to know the truth about his compensation: In addition to one third of any settlement proceeds he negotiated on their behalf, every dollar of Rise's effective twenty percent fee discount went to Hausmann's benefit. Insofar as Hausmann misrepresented this compensation, that discount should have inured to the benefit of his clients. It is of no consequence, despite Appellants' arguments to the contrary, that Rise's fees (absent his discount) were competitive, or that clients received the same net benefit as they would have absent

the kickback scheme. The scheme itself converted Hausmann's representations to his clients into misrepresentations, and Hausmann illegally profited at the expense of his clients, who were entitled to his honest services as well as their contractually bargained-for portion of Rise's discount.

Appellants also contend that the indictment did not properly allege their use of the interstate mails or wire communications systems in furtherance of the kickback scheme. However, the indictment plainly states that Appellants,

> and others acting on their behalf, for the purpose of executing and attempting to execute a scheme to defraud: (a) did cause and intend to cause matter to be delivered by the United States Postal Service and commercial interstate carrier according to the directions thereon . . . ; and (b) did cause or intend to cause sounds to be transmitted in interstate commerce by means of wire communications . . . . The matter included: (a) solicitations and communications from Hausmann-McNally to clients; (b) communications between Hausmann-McNally lawyers and [Rise's clinic] regarding billings; and (c) communications between Hausmann and certain recipients of the kickback checks. The interstate wire communications included telephone calls, facsimiles and emails between Hausmann and certain recipients of the kickback checks; and telephone calls from Hausmann to others regarding the flow of kickback payments.

The indictment thus sufficiently alleges the interstate element of Appellants' conspiracy to commit mail and wire fraud.

Finally, Rise challenges his culpability based on his lack of awareness that Hausmann was defrauding his clients. However, the knowing payer of an illegal kickback is

criminally liable for conspiracy to commit mail or wire fraud to the same extent as the recipient of such a payment. *See, e.g.*, *United States v. Alexander*, 741 F.2d 962, 964 (7th Cir. 1984), overruled on other grounds by *United States v. Ginsberg*, 773 F.2d 798, 802 (7th Cir. 1985). Insofar as Rise knowingly signed checks payable to third-party recipients (in order to conceal the scheme) equal in total amount to twenty percent of the fees he collected in connection with referrals from Hausmann, Rise acted in furtherance of the conspiracy to defraud the clients. His guilt as a co-conspirator is clear.

For all of these reasons, the indictment sufficiently alleges the elements of the mail and wire fraud offenses underlying the conspiracy charge against Appellants: that Hausmann used the required interstate means in order to misuse his fiduciary relationship for his gain and at his clients' expense. Furthermore, we find that a rational jury could have found Rise guilty based upon the evidence produced at his trial.

## II. Constitutionality of the Application of the Mail and Wire Fraud States to Appellants' Conduct

Appellants further challenge the constitutionality of the application of 18 U.S.C. §§ 1341, 1343, and 1346 as void for vagueness and based on principles of federalism. The constitutionality of a federal statute is an issue of law subject to de novo review.

"Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of ordinary notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 357

(1983)). Appellants claim both, that the mail and wire fraud statutes did not provide them with adequate notice of the criminality of their kickback scheme, and that application of the mail and wire fraud statutes to the facts of this case invites the government arbitrarily to police the fairness of private business transactions through enforcement of criminal statutes. With respect to the first of these two arguments, this Court's decision in Bloom,[3] placed Appellants on notice that criminal liability under the mail and wire fraud statutes—particularly under an intangible-rights theory—attaches to the misuse of one's fiduciary position for personal gain. *See* 149 F.3d at 655-56. With respect to the second, the existence of Hausmann's fiduciary duty owed to his clients distinguishes this case from one where the government arbitrarily and impermissibly relies upon the mail and wire fraud statutes to enforce merely the terms of a private contract. *Cf. United States v. Handakas*, 286 F.3d 92, 107 (2d Cir. 2002) (refusing to expand the application of 18 U.S.C. § 1346 and thereby render "[e]very breach of a contract or state law . . . punishable as a felony in federal court"). We therefore find that the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, and 1346, are not unconstitutionally vague, as applied under the intangible-rights theory to a kickback scheme enabled by the offender's misuse of his fiduciary position gain.

Appellants further contend that the indictment violates principles of federalism because it "overreaches" the scope of the federal criminal law by criminalizing conduct which is regulated by state law. Unlike the cases that Appellants cite for this proposition, such as *Handakas*, 286 F.3d 92 (misrepresentations by defendant contractor violated state wage laws); *Cleveland v. United States*, 531

---

[3] *Bloom* was decided in July 1998, more than one year prior to the alleged commencement of the kickback scheme.

U.S. 12 (2000) (defendants made false statements in state gaming license applications); and *United States v. Lopez*, 514 U.S. 549 (1995) (invalidating Gun-Free School Zones Act of 1990 as insufficiently related to regulation of interstate commerce); in which federalization of state laws or state regulated conduct was held unconstitutional, this case casts no meaningful doubt on Congress's authority to regulate use of the interstate mails and wire communications systems in furtherance of fraudulent conduct.[4] The indictment alleged such use of the interstate mail and wire communications systems, including an allegation that kickback payment checks were mailed out of state.[5] Moreover, as the magistrate judge aptly noted in his recommendation to deny Appellants' motions to dismiss the indictment, "[w]ithout some showing that either the statutes in question or the prosecution of this case contravene some specific rule of constitutional or statutory law, the mere fact that the conduct in question is of a sort traditionally dealt with through state law cannot serve as a basis for dismissing [the] indictment." Appellants have made no such showing, and we are unpersuaded by the argument.

### III.   Jury Instructions

As an alternative basis for appealing his conviction, Rise claims that the district court failed to instruct the jury that, in order to convict him, it must find that (i) Rise reasonably contemplated harm to Hausmann's clients and

---

[4] This authority is established in the Postal Power of Article I, Section 8, Clause 7 of the Constitution. *See also United States v. Elliot*, 89 F.3d 1360, 1363-64 (8th Cir. 1996).

[5] Although this allegation related to a charge that was dismissed pursuant to Hausmann's plea agreement, evidence that checks were mailed out of state was presented at Rise's trial.

(ii) the scheme was intended not only as a gain to Hausmann, but also a loss to his clients. Here, Rise alleges an error of law in the jury instructions, which we review de novo.

The district court instructed the jury, in relevant part, as follows:

> To find that there existed a scheme to deprive one or more clients of the Hausmann-McNally law firm of his or her right to the honest services of that firm you must find beyond a reasonable doubt, first, that a fiduciary relationship existed between one or more of the clients of the Hausmann-McNally firm. Second, that Scott Rise and Charles Hausmann knowingly engaged in a scheme to deprive one or more clients of the Hausmann-McNally law firm of the right to honest services of the Hausmann-McNally law firm as charged in Count 1. And, third, that through such scheme, Charles Hausmann misused his fiduciary relationship with one or more clients of the Hausmann-McNally law firm for personal gain.

This instruction adequately and accurately communicates the elements of Rise's offense. There is no requirement under the law as articulated in *Bloom* and reiterated today that a co-conspirator to a wire and mail fraud scheme contemplate actual or foreseeable harm to the victim. Also, though the law does not require the court to instruct a jury that the scheme is intended to cause a loss to the victims *as well as* a gain to the offender, the loss element is implicit in the district court's references both to a deprivation of one or more clients' right to honest services—a type of loss in and of itself—and to Hausmann's gain. As discussed above, once Rise opted to discount his fees for chiropractic services, Hausmann's clients shared Rise's economic loss—a corollary to their entitlement to a portion of Hausmann's gain. Finding no error in the

district court's instruction of the jury that convicted him, we reject Rise's jury instruction claim.

### IV.  Loss Amount

Lastly, Hausmann challenges the district court's calculation of the amount of loss caused to the victims of Appellants' scheme. Specifically, he argues that the court erred in refusing to reduce the value of the loss by the amount of "valuable free services" and fee reductions that Hausmann-McNally provided to clients. He asserts that these services and reductions totaled $238,993.66, a figure exceeding the district court's calculated loss amount of $77,062.87, based upon the aggregate value of the kickbacks, and insists, therefore, that his clients received a net benefit as a result of his representation.

The United States Sentencing Guidelines provide that any amount of loss "shall be reduced by the money returned, and the fair market value of the property returned and the services rendered by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1, Application Note 2(A)(i). Hausmann correctly notes that this Circuit has adopted a "credit against loss" approach to the calculation of fraud victim loss amounts for sentencing guideline purposes. *See, e.g.*, *United States v. Jackson*, 95 F.3d 500, 506 (7th Cir. 2000) (Sentencing Guidelines "call for the court to determine the net detriment to the victim, rather than the gross amount of money that changes hands"). However, that approach is inapplicable to these facts. The free services and reductions that the firm provided to the victims were services routinely provided to *all* Hausmann-McNally clients, not just those who were defrauded. Thus, the relevant inquiry is whether those services and reductions lessened the net detriment to victims of the fraud relative to other clients of

the firm who were not victims. They did not, for which reason the district court properly declined to credit their value against the total amount of the kickback payments.

AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*