In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3452

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH CASTALDI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:05 CR 77—**Rudy Lozano**, *Judge.*

ARGUED SEPTEMBER 5, 2008—DECIDED OCTOBER 27, 2008

Before FLAUM, ROVNER, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*.  Kenneth Castaldi appeals his conviction on thirteen counts of mail fraud and embezzlement from an employee benefits plan. The convictions stemmed from a grant that the Northwest Indiana District Council of Carpenters (the Union) obtained for the purpose of having the Northwest Indiana Joint Apprenticeship Committee (the JAC) teach certain classes to Union members. Castaldi, the director of the Joint Apprenticeship Committee, was convicted of stealing some

of this grant money. Castaldi now raises a number of challenges to his conviction on appeal. He claims that (1) his indictment was legally insufficient; (2) the prosecution improperly presented a mug shot to the jury; (3) the district court improperly excluded testimony as hearsay; (4) the government's evidence on the mail fraud charge was insufficient to support a conviction; (5) the district court failed to properly consider the sentencing factors contained in 18 U.S.C. § 3553(a); and (6) the government did not present sufficient evidence of his intent to embezzle. For the reasons explained below, we affirm the judgment of the district court.

## I. Background

The government's case against Castaldi was essentially that he, along with his co-defendant Paul Hernandez, controlled the account where grant funds were deposited, and then paid themselves (or their credit card companies) sums totaling more than $100,000 from the account.

The State of Indiana awarded the grant to the Union so that it could provide various vocational education programs for Union members; the Union enlisted the JAC to teach classes in the proper use of scaffolding equipment. The terms of the state's grant covered thirty-one percent of the costs of the educational program, up to a maximum of $200,000; the Union would thus need to spend about $645,000 in order to receive the full amount of the grant. The state also required that the Union incur all program-related expenses by March 3, 2000 in order to qualify for reimbursement.

The defendant, in his briefs to this court, emphasized that Hernandez took much of the initiative in obtaining the grant. Hernandez was, at the time the state awarded the grant, in charge of special projects for the Union. He sought out the grant, served as the liaison to state officials, and worked out the logistics of the grant. Hernandez received the grant funds from the state and deposited them in the Northwest Indiana Carpenters District Grant Fund, a checking account opened at the Indiana Carpenters Federal Credit Union. Hernandez, Castaldi, and Gary Nannenga, the head of the Union, were the signatories on this account.

The JAC's role was to provide scaffolding training for Union members, and the state grant funds would be used, in part, to pay for that training. The JAC listed the grant fund checking account on its books and provided the state with W-9 paperwork, signed by Castaldi, as part of the grant. Castaldi, as the head of the JAC, was thus connected to the administration of the grant funds.

The government alleges that the illegal conduct in this case stems from what Hernandez and Castaldi chose to do with the grant funds. Castaldi and Hernandez were signatories to the account in which the grant funds were kept. Drawing on the grant account, Castaldi and Hernandez made out checks to themselves, to a credit card company with which Hernandez had an account, and to a secretary and bookkeeper for the JAC, paying out over half of the grant's proceeds, with most of the payments occurring after the March 3, 2000 deadline for reimbursement.

Castaldi and Hernandez both claimed that the pay-ments were wages that the two were entitled to because of their work on the scaffolding training. The govern-ment pointed out that both are salaried employees, and that the terms of their employment do not include overtime wages. Indeed, Ronald Simko, who replaced Castaldi as director of the JAC in 2001, was offered money from the grant fund in addition to his salary but apparently refused to take it.

Castaldi and Hernandez's payments to themselves violated a number of other JAC by-laws, including the requirement that all checks be signed by a Union trustee and an employer trustee, and a prohibition on Union officials writing their own payroll checks or opening up accounts. Hernandez and Castaldi, both trustees of the JAC, were aware of these requirements and, as far as anyone can tell, never suggested that the JAC modify them.

On May 19, 2005, a federal grand jury indicted Hernandez and Castaldi on twenty-one separate counts. Castaldi was named in count one, charging him with mail fraud, and counts three through fourteen, charging him with theft or embezzlement of an employee benefit plan's assets. A federal jury convicted Castaldi on all counts on November 21, 2006. The district court then rejected Castaldi's motions for an acquittal and a new trial, and ultimately sentenced him to thirty months in prison. This appeal followed.

## II.  Discussion

### A.  The legal sufficiency of the indictment.

Castaldi first challenges the legal sufficiency of the indictment. When a defendant challenges an indictment before the district court, the district court's decision is usually reviewed de novo. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). However, because in this case Castaldi did not object to the indictment before the district court, we review under a more deferential standard. The indictment "must be upheld unless it is so defective that it does not, by any reasonable construction, charge any offense for which the defendant is convicted." *Id.* at 305-06 n.3.

In order for an indictment to be sufficient, it must accomplish three things. First, it must state each element of the crimes charged; second, it must provide the defendant with adequate notice of the nature of the charges so that the accused may prepare a defense; and third, it must allow the defendant to raise the judgment as a bar to future prosecutions for the same offense. *United States v. Fassnacht*, 332 F.3d 440, 444-45 (7th Cir. 2003). We have emphasized that we read indictments practically and as a whole, rather than in a "hypertechnical manner." *Id.* Moreover, the defendant must demonstrate prejudice from the alleged deficiency in the indictment. *United States v. Webster*, 125 F.3d 1024, 1029 (7th Cir. 1997).

Castaldi focuses on counts three through fourteen of his indictment, which stated that defendants "did embezzle, steal, and unlawfully and willfully abstract and convert

to their own use . . . the moneys . . . and other assets of *the Northwest Indiana Joint Apprenticeship Committee [JAC]*" (emphasis added). According to Castaldi, the record is clear that it was the Union, not the JAC, that was issued the grant and that the Union held the grant proceeds. Castaldi further claims that he was prejudiced by this error because the indictment did not provide him with adequate notice of the charges against him, and because he could be prosecuted for the same conduct again, with the Union rather than the JAC as the purported victim.

The reference to the JAC rather than the Union is insignificant, however. As the government correctly points out, even if the Union initially received the grant money, the money was meant to compensate the JAC for scaffolding classes and, thus, the JAC was the entity that would ultimately benefit from the grant funds. Those grant funds were also in an account that was listed on the books of the JAC and to which Castaldi, the head of the JAC, was one of only three signatories. Thus, there is ample basis to believe that the JAC was entitled to the funds during the time of the embezzlement, or at least that the funds were intended for the JAC, and thus it was properly listed as the victim of the scheme.

Additionally, defense counsel in this case agreed to Jury Instruction 37, which provided that a defendant could "be convicted of illegally taking money intended for the benefit of an employee plan even if the money is taken before it is turned over to the plan." Given that defense counsel agreed at trial that Castaldi could be *convicted* of taking money from an employee benefit plan even if

the funds he took had not yet reached that plan, it is very odd for him to argue on appeal that he could not even be *charged* under the same theory of the case.

Accordingly, the record below reveals that Castaldi had adequate notice of the charges against him and that it was proper for the indictment to list the JAC, rather than the Union, as the victim in the indictment.

### B.   The presentation of Castaldi's mug shot to the jury.

Castaldi's second claim is that the district court improperly permitted the government to present a mug shot of him to the jury during the government's opening statement and closing argument. The mug shot was part of a demonstrative aid presenting the flow of funds between the grant, Hernandez, and Castaldi, with the picture accompanying Castaldi's name and place on the flow chart.

Mug shots are generally not admissible at trial because they are indicative of past criminal conduct and thus barred by concerns about presenting evidence of a defendant's past criminal conduct to a jury. *United States ex rel. Bleimehl v. Cannon*, 525 F.2d 414, 416 (7th Cir. 1975). A mug shot may be introduced as evidence, however, when the following conditions have been satisfied. "(1) The prosecution must have a demonstrable need to introduce the photographs; (2) the photos themselves, if shown to the jury, must not imply that the defendant had a criminal record; and (3) the manner of their introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs." *Id.*

The decision to allow the use of demonstrative exhibits is an evidentiary decision which we review for abuse of discretion. *United States v. Warner*, 498 F.3d 666, 691 (7th Cir. 2007).

Castaldi's argument on this issue is limited to the absence of any demonstrable need to introduce the photograph into evidence, coupled with the prejudice from the introduction of a mug shot. The government included the mug shot of Castaldi on a chart used to illustrate how money flowed among different organizations and individuals. The district court determined that the mug shot did not indicate that Castaldi was incarcerated, and that it lacked the prejudicial features of a mug shot, such as a prisoner wearing prison garb or holding up prison slates. Indeed, the photo shows Castaldi wearing street clothes, standing in front of a blank background.

In a case where the government simply uses the photo as part of a demonstrative exhibit, prosecutors are well advised not to present mug shots or other detention-related photos to a jury, particularly when a prosecutor could obtain a similar photo from another government bureau, such as the Department of Motor Vehicles. Were the government to consider such an approach again, we trust they would reflect on the challenges such demonstrative exhibits present. Nevertheless, the record below indicates that the photo was not admitted into evidence and was presented in such a way that the jury would not have been aware of its origins. Although we have reservations regarding the need to introduce the mug shots

when the government could simply have used the defendants' names on the chart, we will not find an abuse of discretion on the basis that we might have acted differently from the district court. Accordingly, the district court did not abuse its discretion in allowing the use of the photo in the demonstrative exhibit.

## C.   Exclusion of testimony as cumulative error.

Castaldi's third challenge is to the district court's refusal to admit various testimony that it determined to be hearsay. Castaldi claims that the various denials collectively amount to cumulative error. Evidentiary rulings are, again, reviewed for an abuse of discretion. *United States v. Aldaco*, 201 F.3d 979, 985 (7th Cir. 2000). In order for evidentiary rulings to amount to cumulative error, a defendant must show that multiple errors ultimately denied him a fundamentally fair trial. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). This requires showing that "but for the errors, the outcome of the trial probably would have been different." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001).

Castaldi points to the district court's decision to sustain a hearsay objection at some point during the testimony of six different witnesses. Castaldi claims that in each instance, the testimony was not offered for the truth of the matter asserted and thus was not hearsay. The government responds that the district court took this distinction into account when examining the government's hearsay objections. Indeed, it claims that in at least two instances the government's objections were sustained

because defense counsel had not identified a relevant purpose for the statement aside from the truth of the matter asserted.

Even assuming arguendo that the district court improperly excluded portions of the testimony on hearsay grounds, Castaldi does not present to this court any indication that the excluded testimony was so material to the case that, were that testimony admitted, the jury would have returned a different verdict. The testimony in question related to statements that Castaldi and other account signatories made to various witnesses about the existence of the trust account or payments from the account; ostensibly, this testimony would have established that various Union officials were aware of the grant funds. However, Castaldi does not point to any testimony of relevance to the charges in this case; none of the testimony indicates that Union or JAC officials knew that Castaldi was paying himself with grant funds, nor that they approved of those payments. The district court thus did not abuse its discretion by excluding the testimony in question; nor can Castaldi demonstrate that, had the testimony been admitted, the outcome of the trial would have been different. We find no cumulative error here.

## D. Sufficiency of the evidence on Castaldi's intent to defraud.

Castaldi's fourth challenge is that the government did not present sufficient evidence of his intent to defraud with respect to the mail fraud count. A challenge to the suffi-

ciency of the evidence is a formidable barrier for a defendant to overcome. This court will review the evidence at trial in the light most favorable to the government and reverse the conviction only if no rational finder of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Wallace*, 212 F.3d 1000, 1003 (7th Cir. 2000).

The government, to prove a mail fraud charge, must prove that a defendant: (1) devised a scheme to defraud; (2) did so knowingly and with an intent to defraud; and (3) used the mail as part of carrying out the scheme. 18 U.S.C. § 1341. Castaldi argues that the indictment charged him with a scheme to defraud during the grant period, while the proof at trial related only to the period after the grant had expired. He also argues that Hernandez pulled the strings on the grant, and thus that the government cannot prove he was a willful participant in the scheme.

The evidence in the record indicates that Castaldi was a long-serving member of both the Union and the JAC, and accordingly that he was familiar with the by-laws of both organizations, including their prohibitions on writing himself checks from JAC or Union accounts. The record also indicates that during and after the grant period Castaldi wrote himself checks from the grant fund account, including checks payable to himself. This court cannot conclude that no rational finder of fact could find that Castaldi entered into a scheme to defraud during the grant period, given that he took money he was not rightfully owed from the account with grant

funds, and that, given his knowledge of the proper procedures to follow with such funds, he did so knowing it did not belong to him. The evidence in the record is thus sufficient to support a conviction.

### E. Whether the district court considered the § 3553(a) factors at sentencing.

Castaldi's fifth claim is that the district court failed to properly explain its sentence of thirty months (which was within guidelines) in light of the sentencing factors in 18 U.S.C. § 3553(a). We review the district court's sentencing procedures de novo. *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007). We review a district court's ultimate sentencing decision for reasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005). A within-guidelines, properly calculated sentence is presumptively reasonable. *Rita v. United States*, 127 S.Ct. 2456, 2462 (2007). With respect to the district court's discussion of the § 3553(a) factors, a "comprehensive essay" is not necessary, nor does the district court have to proceed in a checklist fashion through the factors. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). Instead, the district court must provide the reasoning behind its sentencing decision, while addressing arguments that are "not so weak as not to merit discussion." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

Castaldi argues that he presented evidence to the district court that he had no prior criminal history and is a hardworking and industrious person. He also claims strong support from his family, friends, and community,

and that as a non-violent offender he presents no danger to his community. These factors, Castaldi argues now, supported a sentence of probation or home detention, rather than the prison term that the district court imposed.

The record from the sentencing hearing indicates that the district court considered the factors that Castaldi cites on appeal. Addressing Castaldi and Hernandez, the district court noted that "both of you have talked about your past history, your history of being law abiding and the good you have done. I have no doubt that many of the things that you have done in your life have been good." Sentencing Hearing Tr. vol. 2, p. 82. But the district court then cited the gravity of Castaldi's crime, and the need for deterrence and rehabilitation in imposing a within-guidelines sentence of thirty months. The district court's consideration of the § 3553(a) factors may not have resulted in the court giving Castaldi the sentence that he wanted, but the record reflects that the district court did consider those factors and imposed a sentence that is within the sentencing guidelines and reasonable given the circumstances of this case.

**F. The sufficiency of the evidence with respect to Castaldi's criminal intent.**

Castaldi's final argument to this court is that the government did not present sufficient evidence of his intent to embezzle funds. This argument largely repeats the claim that Castaldi made in his challenge to the sufficiency of the evidence on the mail fraud charge: That Castaldi simply took directions from Hernandez about

the disbursement of the grant funds. Again, however, the record reflects that the government presented testimony that both Castaldi and Hernandez wrote themselves checks out of the grant account, and that both were long-serving Union employees who knew the Union prohibited this practice. There is thus sufficient evidence in the record that Castaldi, in concert with Hernandez, knowingly embezzled funds intended for the JAC.

### III. Conclusion

The judgment of the district court is AFFIRMED.