In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1404

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAGHUVEER NAYAK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 447 — **Robert W. Gettleman**, *Judge.*

ARGUED SEPTEMBER 9, 2014 — DECIDED OCTOBER 20, 2014

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Raghuveer Nayak pled guilty to mail fraud after federal authorities learned that he had been secretly bribing physicians in exchange for referrals to his outpatient surgery centers. As permitted by his plea agreement, Nayak now appeals, claiming that his indictment was legally insufficient because the government did not allege that his conduct caused or was intended to cause tangible harm to any of the referring physicians' patients. Because

actual or intended tangible harm is not an element of the offense of honest-services mail fraud, we affirm.

## I. Background

Nayak owned multiple ambulatory surgery centers—also known as outpatient surgery centers—including two in Chicago: Rogers Park One-Day Surgery Center and Lakeshore Surgery Center. To attract business, he made under-the-table payments to physicians that referred patients to his centers. These bribes and kickbacks took multiple forms, including cash payments and payments to cover referring physicians' advertising expenses. Nayak instructed at least some of his collaborators not to report these payments on their tax returns.

After learning of the kickback scheme, the government indicted Nayak. It later filed a superseding information charging him with honest-services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, and obstruction of the administration of the tax system under 26 U.S.C. § 7212(a). Although both the indictment and the superseding information alleged that Nayak intended "to defraud and to deprive patients of their right to honest services of their physicians" through his scheme, neither alleged that Nayak caused or intended to cause any sort of tangible harm to the patients in the form of higher costs or inferior care. In fact, the government later represented to the district court that the scheme did not cause patients any physical or monetary harm.

In the district court, Nayak filed a motion to dismiss the mail fraud count, contending that the government needed to allege some form of actual or intended harm to the referring

physicians' patients[1] as an element of the crime. The district court rejected this argument, finding that the case law in this circuit imposes no such requirement. Following the denial of his motion to dismiss, Nayak entered a conditional guilty plea to both counts of the superseding indictment. Pursuant to Federal Rule of Criminal Procedure 11(a)(2), Nayak reserved his right to appeal the district court's denial of his motion to dismiss the mail fraud charge. Exercising that right, he now asks us to hold that tangible harm to a victim is a necessary element of honest-services mail fraud, at least in cases not involving fraud by a public official.

## II. Discussion

Nayak's appeal challenges the legal sufficiency of the government's indictment and superseding information. In evaluating this claim, we focus on the government's allegations, which we must accept as true. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). We review challenges to the sufficiency of an indictment de novo. *United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008). To be sufficient, an indict-

---

[1] The government slightly misstates the issue in this case when it argues that the mail fraud statute's harm element was satisfied by the allegation that Nayak's scheme deprived patients *of his surgery centers* of the right to the honest services of their physicians. Actually, the indictment alleged that Nayak's scheme deprived the referring physicians' patients of their right to the honest services *of their physicians*, not that Nayak deprived his own patients of their right to *his* honest services. The breach of a fiduciary duty is a required element of an honest-services fraud conviction. *Skilling v. United States*, 561 U.S. 358, 407–08 (2011). In the district court, Nayak argued that he could not be charged with honest-services fraud because he did not owe a fiduciary duty to the alleged victims of his scheme—the patients of the referring doctors—but Nayak does not raise this issue on appeal.

ment must state each element of the crimes charged, provide the defendant with adequate notice of the nature of the charges so that the accused may prepare a defense, and allow the defendant to raise the judgment as a bar to future prosecutions for the same offense. *Id*. Nayak argues that the indictment failed to meet the first of these three requirements because it did not allege that the victims of his scheme suffered tangible harm, which he claims is an element of a private mail fraud charge.

The federal mail fraud statute criminalizes the use of the mails in the service of, *inter alia*, "any scheme or artifice to defraud." 18 U.S.C. § 1341. Prior to the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350 (1987), lower federal courts frequently interpreted this phrase to include not only schemes that deprived victims of money or property, but also those that deprived them only of their intangible right to honest services. *See Skilling v. United States*, 561 U.S. 358, 400–01 (2011) (discussing the history of the honest-services doctrine). In *McNally*, however, the Court held that the statute protected only property rights, and thus did not encompass schemes to defraud people of merely intangible rights. 483 U.S. at 360.

Congress quickly superseded the *McNally* decision by adding § 1346 to the mail fraud statute, which states that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. This statutory language specifically contemplating prosecutions based on the deprivation of *intangible* rights would seem to present an insurmountable roadblock to Nayak's argument that the government must prove *tangible* harm in order to convict him. Although a lit-

eral reading of the statute would doom his case, Nayak correctly points out that courts have often imposed limiting constructions on § 1346 in order to avoid both absurd results and constitutional issues. *See United States v. Sorich*, 523 F.3d 702, 707 (7th Cir. 2008) ("[G]iven the amorphous and open-ended nature of § 1346, … courts have felt the need to find limiting principles."). In *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998), *abrogated in part by Skilling*, 561 U.S. at 409, we acknowledged the need to cabin § 1346 in some way. "Not every breach of every fiduciary duty," we said, "works a criminal fraud." *Id*. at 654 (quoting *United States v. George*, 477 F.2d 508, 512 (7th Cir. 1973)). Reading § 1346 in light of *McNally*, the case it superseded, as well as the pre-*McNally* intangible rights cases that § 1346 reinstated, we drew the line "that separates run of the mill violations of state-law fiduciary duty … from federal crime" at "[m]isuse of office (more broadly, misuse of position) for private gain." *Id*. at 655. Notably, we said nothing about requiring tangible harm to the *victim*; it was tangible benefit to the *defendant* that triggered federal criminal liability. *See United States v. Fernandez*, 282 F.3d 500, 507 (7th Cir. 2002) (discussing our holding in *Bloom*).

The scope of § 1346 was further limited by the Supreme Court in *Skilling*, a case which dealt with private corruption. 561 U.S. at 369. Faced with an argument that § 1346 was unconstitutionally vague, the Court "look[ed] to the doctrine developed in pre-*McNally* cases" and "pare[d] that body of precedent down to its core: In the main, the pre-*McNally* cases involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Id*. at 404. Accordingly, the Court construed § 1346 to reach "*only* the bribe-and-kickback

core of the pre-*McNally* case law." *Id*. at 409. It also held that "the violation of a fiduciary duty" was a prerequisite to an honest-services fraud conviction. *Id*. at 407–08.

Our specific holding in *Bloom* did not survive *Skilling*. Now, "only bribery or kickbacks," rather than any private gain whatsoever, "can be used to show honest-services fraud." *Ryan v. United States*, 688 F.3d 845, 847 (7th Cir. 2012). However, our general approach in *Bloom*, which focused on the defendant's benefit from the fraud rather than any harm to the victim, was vindicated by the Court's favorable discussion of pre-*McNally* honest-services cases: "the honest-services theory targeted corruption [in which] … the offender profited [and] the betrayed party suffered no deprivation of money or property." *Skilling*, 561 U.S. at 400.

Returning to this case: Nayak engaged (via the mails) in a bribe-and-kickback scheme to drum up business for his surgery centers. His conduct accordingly appears to fall squarely within the scope of § 1346 as the Court construed it in *Skilling*. However, Nayak urges us to create yet another judicial limitation on the scope of that section: a requirement that the victims of *private* honest-services fraud suffer actual or intended tangible harm. Congress, he argues, accidentally painted with a too-broad brush in § 1346 by stating that *all* schemes to deprive another of the intangible right to honest services are schemes to defraud. According to Nayak, Congress really intended this language to apply only to schemes by public officials; § 1346, therefore, does not apply to him.

To support this argument, Nayak points primarily to an Eighth Circuit case, *United States v. Jain*, 93 F.3d 436 (8th Cir. 1996), where the court indeed made such a distinction between private and public corruption cases, albeit in dicta.

The defendant in that case was a doctor who participated in a patient-referral scheme much like Nayak's. *Id*. at 438–39. The court stated that he could not be convicted of honest-services mail fraud without a showing that his patients suffered tangible harm. *Id*. at 441–42. Most of the pre-*McNally* honest-services cases, the court observed, involved only public corruption: bribes and kickbacks involving elected or appointed public officials. *Id*. at 441. And while the court observed that "[i]t is certainly true that the literal language of § 1346 extends to private sector schemes to defraud another of the right to 'honest services,'" it also felt that "the transition from public to private sector in this context raises troublesome issues." 93 F.3d at 441–42.

> When official action is corrupted by secret bribes or kickbacks, the essence of the political contract is violated. But in the private sector, most relationships are limited to more concrete matters. When there is no tangible harm to the victim of a private scheme, it is hard to discern what intangible "rights" have been violated… . Thus, prior intangible rights convictions involving private sector relationships have almost invariably included proof of actual harm to the victims' tangible interests.

*Id*. at 442.

The Eighth Circuit ultimately concluded that it did not need to define the scope of the right to honest services in private sector cases, and instead reversed Dr. Jain's conviction because it found no evidence to suggest that Jain had fraudulent intent. *Id*. Because Jain had caused no actual harm, the government was required to show that Jain had

intended to defraud his victims. *Id*. The evidence, according to the court, showed only that Jain "intended to provide and did in fact provide his patients with the highest quality psychological services," and thus intended no tangible harm. *Id*. And, though the court acknowledged that Jain's failure to disclose the kickback he received from third-party providers could constitute criminal fraud if this nondisclosure was material, the court held that there was no evidence that any patient would consider this information material "if it did not affect the quality or cost of [Jain's] services to that patient." *Id*.[2]

We find this analysis unpersuasive, most notably because the proposed distinction between private and public corruption has no textual basis in § 1346. But even if *Jain* was convincing at the time it was decided, its holding is no longer good law, as *Skilling* clearly states that private fraud schemes fall under § 1346: "§ 1346[] appli[es] to state and local corruption *and* to private-sector fraud." 561 U.S. at 413 n.45 (emphasis added). Nayak's entire argument—as well as the *Jain* decision—is based on the premise that § 1346 does not apply to private corruption, and thus that the government must show tangible harm in a private corruption case. But because *Skilling* tells us that § 1346 applies to this case, the rest is clear: § 1346 applies exclusively to the *intangible* right of honest services, so tangible harm need not be shown. Why would Congress specify (via § 1346) that § 1341 reaches schemes causing intangible harm if Congress also meant to limit § 1341 only to schemes that result in tangible harm?

---

[2] Nayak does not dispute that the bribes he paid were material to the referring physicians and their patients.

The *Skilling* Court, Nayak argues, did not explicitly determine what elements are required to prove a violation of § 1346 by a private actor. True, but it did not need to: it is contradictory to require the government to show actual or intended *tangible* harm when the crime being prosecuted is defined as causing or intending to cause *intangible* harm. Nayak's proposed construction would not only be contrary to the plain language of the statute but would also mean that § 1346 is superfluous, as fraudulent schemes causing tangible harm are covered under § 1341.

Furthermore, because *Jain*'s distinction between public and private fraud is no longer supported by law, the Eighth Circuit's holding regarding Jain's lack of fraudulent intent is also unsupported. The Eighth Circuit found no fraudulent intent in *Jain* because the defendant did not intend to deprive his victims of anything tangible. He clearly did, however, intend to deprive his patients of their intangible right to honest services. And since we now know that private mail fraud cases are not limited to schemes that cause tangible harm, it must be the case that intent to cause intangible harm is sufficient to support the fraudulent intent element of the mail fraud statute. In this case, the indictment alleges that Nayak's bribes were intended to be material to the recipient physicians' referral decisions. Therefore, the indictment adequately alleges that Nayak intended to deprive his victims of their intangible right to honest services.

Even without the Supreme Court's holding in *Skilling*, our precedent demonstrates that the government does not need to show tangible harm to a victim in an honest-services fraud case. In *United States v. Fernandez*, we rejected the defendant's reliance on *Jain* and another out-of-circuit case as

"misplaced," and declared that "[t]his Circuit has never required the government to establish a 'contemplated harm to the victim'" in mail fraud cases. 282 F.3d at 507. Nayak points out that *Fernandez* was a public corruption case. But *Fernandez*'s blanket statement was not limited to public corruption cases—it said that we have never required contemplated harm, period. Our statements in other public corruption cases have been similarly broad. *See, e.g., Bloom*, 149 F.3d at 655 (noting that "misuse of *position*" for private gain, not just "misuse of office," violates § 1346 (emphasis added)); *see also United States v. Segal*, 644 F.3d 364, 367 (7th Cir. 2011) ("Loss is not required to prove fraud, whether monetary or otherwise."); *United States v. Leahy*, 464 F.3d 773, 786–97 (7th Cir. 2006) (the mail and wire fraud statutes "do not require the government to prove either contemplated harm to the victim or any loss").

Nayak argues, however, that the language in our private corruption cases requires tangible harm to a victim. For example, *United States v. Hausmann*, 345 F.3d 952 (7th Cir. 2003), dealt with a kickback scheme similar to this one. The defendant in that case, a personal injury lawyer, frequently referred his clients to a chiropractor named Rise. *Id*. at 954. In return, Rise agreed to direct 20% of his medical fees to third parties that Hausmann would select. *Id*. Hausmann's retainer agreement with his clients provided that Hausmann would receive 1/3 of any settlement and that Hausmann would pay the client's medical bills from the client's portion of the settlement. *Id*. Hausmann's referrals earned him over $70,000 in kickbacks made to the third parties for his personal benefit or entities in which he had some interest. *Id*. at 956.

"[U]nder the intangible-rights theory," we explained, "a valid indictment need only allege … that a defendant used the interstate mails or wire communications system in fur-therance of a scheme to misuse his fiduciary relationship for gain at the expense of the party to whom the fiduciary duty was owed." *Id*. Nayak seizes on the language requiring that the scheme must be "at the expense" of the defendant's vic-tims, arguing that this requires a showing of tangible harm in private corruption cases. But *Hausmann* did not say that the "expense" to the victim had to be a tangible one. Indeed, later on in the case we said that "[i]t is of no conse-quence … that clients received the same net benefit as they would have absent the kickback scheme." *Id*. at 957. Rather, what we found objectionable was the intangible harm that Hausmann's clients suffered when their lawyer violated his fiduciary duty and deprived them of his honest services: "The scheme itself converted Hausmann's representations to his clients into misrepresentations, and Hausmann illegally profited at the expense of his clients, who were entitled to his honest services *as well as* their contractually bargained-for portion of Rise's discount." *Id*. (emphasis added). [3]

---

[3] Similarly, in *United States v. Montani*, 204 F.3d 761 (7th Cir. 2000), we affirmed the honest-services conviction of a defendant in charge of liqui-dating old furniture for Sears, Roebuck & Company. The defendant had sold furniture to his collaborator at 10 cents on the dollar, knowing that his partner would turn around and sell it for 30 cents; the two split the profits. *Id*. at 764. We upheld the conviction, noting that "[t]he transac-tion was fraudulent in that it deprived Sears of both property—the 20 cents on the dollar it lost—*and the honest services of its employee*." *Id*. at 769 (emphasis added). Although there was a pecuniary impact on the victim in *Montani*, we did not hold that a pecuniary loss was necessary for a conviction under § 1341.

Nayak's *Hausmann* argument conflates harm with tangibility. But it is clear that Congress thought that the victims of fraud could be harmed even if the harm was only intangible—that was the purpose behind enacting § 1346. Although the schemes in many of our private corruption precedents had a pecuniary impact on the person to whom a fiduciary duty was owed, we have never said that tangible harm is required in such a case. Indeed, the intangible harm from a fraud can often be quite substantial, especially in the context of the doctor–patient relationship, where patients depend on their doctor—more or less completely—to provide them with honest medical services in their best interest. Even where a less important fiduciary interest is at play, though, the mail fraud statutes are clear: no showing of tangible harm to a victim is necessary. Therefore, the mail fraud charge in this case was sufficiently alleged.

### III. Conclusion

We AFFIRM the judgment of the district court.